UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC FULTON, et al.

      Plaintiffs,

v.

FCA US LLC,

      Defendant.

Case No. 24-cv-13159

Honorable Robert J. White

---

**ORDER DENYING FCA US LLC'S MOTION TO DISMISS
PLAINTIFFS' COMPLAINT (ECF No. 9)**

---

Plaintiffs Eric Fulton, Crystal Bush, Phillip Garton Jr. and Tonya Rogers sued FCA US LLC (FCA)[1] for breach of its fiduciary duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, and for related breaches of applicable law. (ECF No. 1, PageID.2). Plaintiffs represent a proposed class of participants and beneficiaries in retirement plans offered by FCA. (*Id.*). Plaintiffs alleged that FCA imprudently retained underperforming investments in its retirement plans such that it is subject to liability. (*Id.* at PageID.36). In addition to its breach of fiduciary duty claim, Plaintiffs also brought claims for failure to

---

[1] FCA is the only remaining Defendant following the parties' stipulated dismissal of claims against the Board of Directors of FCA US LLC and FCA US LLC Employee Benefits Committee. (ECF No. 17; ECF No. 18).

monitor and knowing breach of trust against FCA. (*Id.* at PageID.36–38).  Among
the relief sought, Plaintiffs requested damages and that the Court grant an injunction
prohibiting FCA from retaining the challenged investments in its retirement plans.
(*Id.* at PageID.4).

Presently before the Court is FCA's motion to dismiss the complaint. (ECF
No. 9).  According to FCA, Plaintiffs presented evidence insufficient for the Court
to infer that FCA's inclusion and retention of the challenged funds in its retirement
plans was flawed. (*Id.* at PageID.72).  Namely, Plaintiffs' attempt to compare the
funds it challenges to funds and indices on the market fails as the two groups are
materially different. (*Id.* at PageID.73).  The same reasoning applies to Plaintiffs'
comparison of the challenged funds with its internal benchmarks and identified
goals. (*Id.* at PageID.89–90, 96–97).  Because Plaintiffs' other claims are derivative
of its breach of fiduciary duty claim, FCA asked the Court to dismiss the remaining
claims in tandem with its dismissal of the breach claim. (*Id.* at PageID.102–03).  In
response, Plaintiffs offered Sixth Circuit precedent that found allegations similar to
those here as sufficient to survive a motion to dismiss. (ECF No. 15, PageID.1317,
1321).

The Court finds the parties' briefing sufficient to resolve the motion absent a
hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).  Because Plaintiffs

offered facts adequate to state a breach of fiduciary duty claim, the Court will deny FCA's motion.

## I.    Background

Plaintiffs and the proposed class are participants and beneficiaries in the FCA US LLC UAW Savings Plan (UAW Plan) and the FCA US LLC Salaried Employees' Savings Plan (Salaried Employees' Plan) (together, the Plans). (ECF No. 1, PageID.2).   FCA is an automotive company that designs, engineers, manufactures, and sells vehicles under several recognizable brands. (*Id.* at PageID.5).   Plaintiffs defined the proposed Class Period as "six years prior to the date the Action is filed and continuing to the date of judgment, or such earlier date that the Court determines is appropriate and just." (*Id.* at PageID.2).   Plaintiffs filed the action on November 26, 2024. (*Id.* at PageID.39).

The Plans are participant-directed, defined contribution plans. (*Id.* at PageID.7).   Defined contribution plans are offered by employers as a tax-deferred, retirement savings vehicle for employees. (*Id.* at PageID.2).   A participant-directed defined contribution plan allows participants to direct the investment of their contributions into various investment options offered under the Plans. (*Id.* at PageID.7).   And with such plans, participants bear the risk of high fees and investment underperformance. (*Id.* at PageID.2–3).   As of December 31, 2022, the UAW Plan boasted 54,206 participants with balances and assets totaling more than

$4 billion. (*Id.* at PageID.3).  Its Salaried Employees' Plan is similarly large, with 18,886 participants and assets exceeding $4 billion as of December 31, 2022. (*Id.*).

The investment options made available to participants in the Plans include various mutual funds and collective trust funds. (*Id.* at PageID.7).  At issue in the present lawsuit are the inclusion of (1) the Custom Target Dates Funds (FCA TDFs) and (2) the US Large Cap Equity Fund (Large Cap Equity Fund) as investment offerings in the Plans. (*Id.* at PageID.15, 19).  The Court will refer to the FCA TDFs and Large Cap Equity Fund together as the "Challenged Funds."

Generally speaking, a target date fund (TDF) is a type of investment vehicle offering a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches. (*Id.* at PageID.8). The shifts occur along what is referred to as a TDF's "glide path." (*Id.*).  A TDF glide path is managed either "to" or "through" retirement. (*Id.* at PageID.9).  A "to" retirement glide path assumes participants will withdraw their funds once they reach the presumed retirement age or soon thereafter. (*Id.*).  Asset allocation remains static once the retirement date is reached. (*Id.*).  A "through" retirement TDF anticipates that participants will remain invested after reaching retirement and gradually draw down on their funds, so the terminal allocation is not reached until a predetermined number of years after the target date. (*Id.*).  The purpose of a TDF is to provide dynamic, straightforward asset allocation with long-term growth and capital

preservation. (*Id.* at PageID.8).  A TDF manager can choose to populate asset classes in the underlying mutual funds to be actively or passively managed. (*Id.* at PageID.10).

The FCA TDFs consist of a suite of twelve custom TDFs. (*Id.* at PageID.19). The Plans have offered the FCA TDFs since their inception January 2013. (*Id.*).  The FCA TDFs are managed "through" retirement. (*Id.* at PageID.20).  The Plans designate the FCA TDFs as the Qualified Default Investment Alternative (QDIA). (*Id.*).  Thus, if participants do not indicate where to invest their assets, all contributions are automatically invested in the QDIA, i.e., the FCA TDFs. (*Id.* at PageID.20–21).  Throughout the proposed Class Period, the FCA TDF with the target year closest to a participant's assumed retirement age served as the QDIA in the Plans. (*Id.* at PageID.21).  As of December 31, 2022, approximately 49% of the Plans' assets were invested in the FCA TDFs. (*Id.*).

The managers of the FCA TDFs designed a custom benchmark against which to assess the FCA TDFs' performance. (*Id.*).  For each TDF vintage, the FCA Custom Blend benchmark is a weighted mix of several market indices that are representative of the asset classes in which the FCA TDFs invest. (*Id.*).  The FCA Custom Blend benchmark, however, reflects the ability of FCA TDFs managers to execute their own particular investment strategy, and not necessarily the soundness of that strategy as compared to similar investments in the marketplace. (*Id.* at PageID.21–22).

Likewise, participants are not privy to what indices comprise the FCA Custom Blend benchmark. (*Id.* at PageID.21).

According to Plaintiffs, the "FCA TDFs are significantly worse performing than the broader TDF marketplace, their own benchmarks, and industry benchmarks." (*Id.* at PageID.19). Plaintiffs pointed to several external and internal benchmarks to gauge the FCA TDFs' performance. (*Id.* at PageID.18–29). First, because the S&P Target Date Indices (S&P Indices) are the most common benchmark to approximate performance of the TDF industry, these are an appropriate, meaningful benchmark comparator for the FCA TDFs. (*Id.* at PageID.22). Second, the FCA Custom Blend benchmarks are useful because they were designed to measure performance metrics internally. (*Id.* at PageID.21). Third, Plaintiffs compared the FCA TDFs to the median of all peer TDFs, classified by vintage in the same Morningstar category. (*Id.* at PageID.23).

At the start of the Class Period, the FCA TDFs had sufficient performance history to evaluate the suite's five-year returns. (*Id.*). More than half of the vintages outperformed their respective Custom Blend Benchmark on a five-year annualized return basis. (*Id.*). But every vintage except one failed to beat its respective S&P Index and the median return of all peer TDFs. (*Id.*). The FCA TDFs performance compared to these benchmarks did not improve over time. The five-year annualized returns from 2018 to 2023 show that the majority of vintages failed to exceed the

returns of the Custom Blend Benchmark, the S&P Index, and the peer median return. (*Id.* at PageID.24).  By 2023, almost all vintages failed to beat the ten-year returns for these same three benchmarks. (*Id.* at PageID.25).

In addition to the S&P Indices, the Custom Blend Benchmark, and the broad peer universe, Plaintiffs measured the FCA TDFs' performance against five specific "Comparator TDFs." (*Id.*).  Together, the Comparator TDFs managed approximately 70% of all TDF assets in the market. (*Id.* at PageID.26).  The Comparator TDFs are: (1) Vanguard Target Retirement; (2) T. Rowe Price Retirement; (3) BlackRock LifePath Index; (4) American Funds Target Date Retirement; and (5) Fidelity Freedom. (*Id.*).  These TDFs consistently outperformed the FCA TDFs, providing investors with more capital appreciation. (*Id.* at PageID.25).

Plaintiffs also alleged that FCA retained the Large Cap Equity Fund in Plans despite its consistent and significant underperformance. (*Id.* at PageID.15–16).  The Large Cap Equity Fund is a custom investment fund managed exclusively for the Plan. (*Id.* at PageID.15).  It opened for investment in 2013 and is comprised of three component strategies: Lazard US Equity Concentrated, Jacobs Levy Large Cap Growth, and LSV US Large Cap Value Equity. (*Id.*).  FCA identified the S&P 500 Index (S&P 500) as the benchmark for the Large Cap Equity Fund and classified the fund in the Large Blend Morningstar category. (*Id.*).  FCA also indicated that the Large Cap Equity Fund had an objective of outperforming the S&P 500 over a full

market cycle. (*Id.*).  At the start of the Class Period, the Large Cap Equity Fund's five-year annualized return trailed that of the benchmark by 1.17%. (*Id.* at PageID.16).

The Large Cap Equity Fund's five-year performance similarly lagged the median return of the Large Blend peer group. (*Id.*).  Likewise, the Large Cap Equity Fund failed to produce a five-year return to beat the benchmark in any year of the Class Period. (*Id.* at PageID.18).  By 2023, the Large Cap Equity Fund's ten-year annualized return as of December 31, 2023 trailed that of the benchmark by 1.22%. (*Id.*).  It also trailed the peer median five-year return in five of the six periods where data was available, and its ten-year return lagged the median ten-year return of the Morningstar Large Blend category. (*Id.*).  As of June 30, 2024, the Fund's five-year returns trailed those of its benchmark by 2.54% annualized and those of the median peer by 1.40% annualized. (*Id.* at PageID.19).  The fund's ten-year returns similarly fell behind both the index and the category. (*Id.*).

Plaintiffs alleged that FCA's failure to remove the Challenged Funds from the Plans violated its fiduciary duty of prudence owed to participants in the Plans under ERISA. (*Id.* at PageID.35–36).  Plaintiffs also brought claims for failure to monitor and, in the event the Court decides that FCA is not a fiduciary, knowing breach of trust. (*Id.* at PageID.36–38).  FCA moved to dismiss Plaintiffs' claims, (ECF No. 9),

and its motion is fully briefed. (*Id.*; ECF No. 15; ECF No. 16).  After submitting its

reply brief, FCA filed supplemental authority. (ECF No. 22).

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to

dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be

granted."  To survive a motion to dismiss, the factual allegations contained in the

complaint "must be enough to raise a right to relief above the speculative level." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements," will not

suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Instead, the alleged facts must

establish a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570.

When reviewing a motion to dismiss, courts "construe the complaint in the

light most favorable to the plaintiff, accept all the factual allegations as true, and

determine whether the plaintiff can prove a set of facts in support of its claims that

would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360

(6th Cir. 2001).  In doing so, the court must consider the complaint "in its entirety."

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  That means

"documents incorporated into the complaint by reference" and "matters of which a

court may take judicial notice" are part of the court's analysis. *Id.*  Thus, a court may

consider exhibits attached to a motion to dismiss "so long as they are referred to in

the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Bovee*, 272 F.3d at 360–61 ("[The] Court may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached, without converting the motion into one for summary judgment under Fed. R. Civ. P. 56.") (citation omitted); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006) (noting courts may take into account ERISA plan documents incorporated by reference in the complaint). And a court "may also take judicial notice at the pleading stage of certain public documents, including . . . publicly filed disclosure documents." *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 698 (E.D. Mich. 2010). But in general, "a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005).

## III. Analysis

Plaintiffs alleged that FCA retained underperforming investments in the Plans in violation of its fiduciary duties. (ECF No. 1, PageID.3). Namely, if FCA acted prudently as required under ERISA, it would have discontinued offering the FCA TDFs and the Large Cap Equity Fund in favor of better performing alternatives. (ECF No. 1, PageID.15–21). But according to FCA, the allegations are insufficient

for the Court to infer that FCA acted imprudently in retaining the FCA TDFs and Large Cap Equity Fund as part of the Plans. (ECF No. 9, PageID.72–73).

That is, Plaintiffs' attempt to compare the Challenged Funds with general market indices, benchmarks, and other funds falls flat given the dissimilarities between the two groups. (*Id.*).  Because Plaintiffs' breach claim depends on the comparators' performance in relation to the Challenged Funds, the lack of meaningful benchmarks renders the claim deficient. (*Id.* at PageID.86).  FCA therefore asked the Court to dismiss the breach of fiduciary duty claim. (*Id.* at PageID.85).  And if the Court grants dismissal on this claim, it must also dismiss Plaintiffs' claims for failure to monitor and knowing breach of trust as they are derivative of the breach of fiduciary duty claim. (*Id.* at PageID.102–03).

Plaintiffs responded that not only did they allege meaningful benchmarks, but also that the Challenged Funds persistently and substantially underperformed when compared to these benchmarks and the Challenged Funds' own designated goals. (ECF No. 15, PageID.1317–29).  And since the breach of fiduciary duty claim should survive, so too should the failure to monitor and knowing breach of trust claims. (*Id.* at PageID.1331–32).

In resolving FCA's motion, the Court will first analyze FCA's request for the Court to recognize, either by judicial notice or incorporation by reference, the

exhibits attached to the motion.  The Court will then consider whether to dismiss Plaintiffs' claims.

### A.     The Court Will Consider and Take Judicial Notice of FCA's Exhibits.

FCA asked the Court to take judicial notice of exhibits attached to its motion as they are publicly filed, incorporated by reference in Plaintiffs' complaint, or both. (ECF No. 9, PageID.84–85).  Plaintiffs offered little challenge to FCA's request for the Court to take judicial notice of exhibits attached to FCA's motion. (ECF No. 15, PageID.1315–16).  Rather, Plaintiffs asked that in the event the Court consider the documents, that it refrains from analyzing the financial performance of various funds to determine that dismissal is required as a matter of law. (*Id.* at PageID.1316).

The Court will take judicial notice of publicly available documents, such as Forms 5500 associated with the Plans and summary prospectuses for the Comparator TDFs that Plaintiffs refer to in the complaint. *See Chamberlain*, 757 F. Supp. 2d at 698.  The Court will also consider the Challenged Funds' fact sheets as these are central to and referred to repeatedly in the complaint as evidence of the Challenged Funds' internal goals and benchmarks. (ECF No. 1, PageID.15, 23).  Accordingly, the Court will take judicial notice of the attached documents.  In doing so, the Court will decline to convert the motion to summary judgment.

**B.**     **Plaintiffs Alleged Sufficiently FCA's Breach of the Duty of Prudence.**

Taking the allegations in the complaint as true, the Court finds that Plaintiffs established their breach of fiduciary duty claim under ERISA such that it survives FCA's motion to dismiss.

ERISA imposes a duty of prudence on plan fiduciaries. *Pfeil v. State St. Bank and Tr. Co.*, 806 F.3d 377, 380 (6th Cir. 2015).  As set forth by statute, a plan fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).  Said simply, a plan fiduciary must "act prudently in managing the plan's assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 411–12 (2014).  To act prudently "requires plan administrators to select initial investments options with care, to monitor plan investments, and to remove imprudent ones." *Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022).  Thus, the "duty of prudence is a process-driven obligation." *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 213 (6th Cir. 2024), *petition for cert. filed*, (U.S. Mar. 28, 2025) (No. 24-1030).  "The focus is on each administrator's real-time decision-making process, not on whether any one investment performed well in hindsight." *Forman*, 40 F.4th at 448.  A plan participant that believes a fiduciary did not act prudently in managing the plan's

assets may bring a breach of fiduciary duty claim. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1162 (6th Cir. 2022)).

For claims based on imprudent retention of underperforming investments, courts "ask whether the fiduciary, at the time it chose to retain an investment, 'employed the appropriate methods to investigate the merits of the investment.'" *Johnson*, 122 F.4th at 213 (quoting *Pfeil*, 806 F.3d at 384). "The ultimate question is whether the fiduciary engaged in a reasoned decision-making process when it decided to retain the investment." *Johnson*, 122 F.4th at 213. But "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Pen. Ben. Guar. Corp. ex rel St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley*, 712 F.3d 705, 718 (2nd Cir. 2013) (citation omitted). So "[e]ven when the alleged facts do not 'directly address[] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Johnson*, 122 F.4th at 219 (quoting *Morgan Stanley*, 712 F.3d at 718).

Thus, if a court can reasonably infer imprudent process from the supporting allegations, it will not dismiss a breach of fiduciary duty claim. *See Griffin v. Flagstar Bancorp, Inc.*, 492 Fed. App'x 598, 603 (6th Cir. 2012). Still, the allegations are subject to "careful, context-sensitive scrutiny" to weed out meritless

claims. *Forman*, 40 F.4th at 448 (quoting *Dudenhoeffer*, 573 U.S. at 425). And although "[t]he fiduciary duties under ERISA are the highest known to law," *Griffin*, 492 Fed. App'x at 603 (citation omitted), courts "'must give due regard to the range of reasonable judgments a fiduciary may make based on [its] experience and expertise.'" *Forman*, 40 F.4th at 448 (quoting *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022)). According to Plaintiffs, FCA acted imprudently when it retained the FCA TDFs and the Large Cap Equity Fund despite its underperformance.

A showing of imprudence, however, does not come down to "simply pointing to a fund with better performance." *Forman*, 40 F.4th at 448–49. Although such comparison may "offer a building block for a claim of imprudence," the comparison alone is insufficient to demonstrate a breach of fiduciary duty. *Johnson*, 122 F.4th at 216. Rather, additional context-specific evidence is required to survive dismissal. *See id.* at 216.

Here, the Court finds that Plaintiffs presented evidence beyond the existence of better performing funds. Namely, Plaintiffs argued that the Challenged Funds failed to meet their own internal goals and benchmarks. When considered together, the Challenged Funds' repeated inability to meet FCA's designated benchmarks and the availability of alternative, better-performing investments establishes an inference of flaws in the fiduciary process. Thus, as explained further below, the Court finds

15

that claims regarding both the FCA TDFs and the Large Cap Equity Fund may proceed.

### 1.     FCA TDFs

Plaintiffs alleged evidence sufficient to infer that FCA acted imprudently in retaining the FCA TDFs.  In support of its argument, Plaintiffs alleged that the FCA TDFs underperformed when compared to (1) the S&P Indices; (2) the peer median of all TDFs; (3) the FCA Custom Blend Benchmark; and (4) five comparable TDFs on the marketplace. (ECF No. 1, PageID.21–29).  The allegations share a common theme.  That is, the sole basis for a finding of imprudence is the FCA TDFs performance in relation to external or internal benchmarks. Pre-*Johnson*, it appeared unlikely that such allegations, on their own, sufficed to state a claim.   In *CommonSpirit*, the Sixth Circuit proclaimed that "[a] side-by-side comparison of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option." 37 F.4th at 1167.  Given that "distinct funds [may] deal with different objectives for different investors" over time, underperformance of one fund compared to another in a narrow time window does not indicate imprudence, at least on its own. *Id.* at 1166–67.  The Sixth Circuit affirmed its reasoning in *CommonSpirit* in *Forman*. *See* 40 F.4th at 449–50.

But *Johnson* clarified that although pointing to a higher-performing fund is not enough to state a claim, a fund's failure to meet its own "disclosed investment objectives" does support a breach claim. 122 F.4th at 218. "Where a complaint alleges that a fund, by its design, sets a benchmark for itself and repeatedly fails to meet that benchmark, it is perfectly appropriate to submit to a jury the prudence of the administrator's process in retaining the fund despite that failure." *Id.* Here, Plaintiffs alleged that the FCA TDFs underperformed not just comparator funds and relevant market indices but its internal benchmarks as well. (ECF No. 1, PageID.19–29). Following *Johnson*'s guidance, that evidence, considered in conjunction with better-performing funds, is enough to state a claim.

FCA argued that the comparisons are inapt given the material differences between the funds. (ECF No. 9, PageID.86–96). So even if comparison to better-performing funds and internal benchmarks is facially sufficient to survive a motion to dismiss, the actual benchmarks Plaintiffs relied on in their complaint are impossible to compare with the FCA TDFs. But the Court finds that, after accepting the allegations in the complaint as true, that the comparisons between the internal and external benchmarks and the FCA TDFs are appropriate.

As articulated in *Johnson*, at the motion to dismiss stage, the "appropriate inquiry is whether the complaint alleges enough facts to permit the reasonable inference that the [relevant] benchmark would allow a jury to assess appropriately

17

the Funds' performance and the prudence of the process that led to their retention." 122 F.4th at 218.  In *Johnson*, the Sixth Circuit found the following allegations were appropriate for later resolution by a factfinder: (1) the challenged funds were designed to meet industry-recognized benchmarks; (2) the S&P target date fund benchmark was one such benchmark; and (3) the challenged funds systematically underperformed that benchmark. *Id.* at 218–19.

Here, Plaintiffs' allegations parallel those the Sixth Circuit found sufficient to state a claim in *Johnson*.  First, Plaintiffs alleged that S&P Indices "are the most common benchmark used to approximate the performance of the TDF industry," and that the S&P Indices "represent[ed] an appropriate, meaningful benchmark comparator for the FCA TDFs." (ECF No. 1, PageID.22).  When compared to the S&P Indices, the FCA TDFs failed to outperform. (*Id.* at PageID.24–25).  The Court must accept the S&P Indices' characterization as true, and in doing so, accepts that they are an appropriate benchmark.  The Court is not persuaded by FCA's cited cases on this issue, as they are unpublished, out-of-circuit decisions and the Court is bound by *Johnson*. *See* ECF No. 9, PageID.87–88 (citing cases that reject the S&P Target Dates Indices as an appropriate comparison).

The same is true for the FCA Custom Blend Benchmark.  In fact, FCA designed the FCA Custom Blend Benchmark as a way to assess the performance of the FCA TDFs. (ECF No. 1, PageID.21–22).  So, to the Court, it seems a natural

comparison to the FCA TDFs. And provided that the FCA TDFs consistently underperformed the FCA Custom Blend Benchmark, it is possible FCA acted imprudently in retaining the FCA TDFs for as long as it did. (*Id.* at PageID.24–25). As for the peer median comparison, Plaintiffs stated that the peer TDFs were "classified by vintage in the same Morningstar category" as the FCA TDFs as "indicated in the fact sheets made available to participants." (*Id.* at PageID.22–23). Considering the fact sheets classified the peer TDFs as in the same group as the FCA TDFs, and when viewed in the overall context of the FCA TDFs' performance, the FCA TDFs' failure to meet the peer median supports the Court's decision to sustain the complaint.

The Court is less certain, however, that the five Comparator Funds are useful measures of the FCA TDFs' performance given their distinct goals and strategies. But the Court finds that whether the Comparator TDFs are similar, and whether the FCA TDFs performed significantly worse, is best left for resolution at summary judgment or by a factfinder at trial. Because there is already evidence that the FCA TDFs performed worse than external, and critically, *internal* benchmarks and objectives, the Court's decision on the Comparator Funds does not necessarily affect the complaint's survival.

And, importantly, FCA designated the FCA TDFs as the QDIA. For inexperienced participants that did not select funds themselves, the Plans funneled

their investments into the FCA TDFs. (*Id.* at PageID.20–21).   By designating the FCA TDFs as the default, it becomes especially important for FCA, as a fiduciary, to act prudently in selecting and retaining such funds.   Based on the complaint, it is not clear that FCA did act prudently; at the very least, Plaintiffs' established a plausible inference that FCA should have removed the FCA TDFs from the Plans.

Finally, FCA argued that Plaintiffs' three-to-five-year performance metrics are insufficient to allege meaningful underperformance of retirement plans. (ECF No. 9, PageID.97–102).   But Plaintiffs presented evidence beyond just three-to-five years. (ECF No. 1, PageID.25).   And whether three-to-five-year metrics are appropriate in this context are best left to resolution on the facts, not law.[2]

### 2.   Large Cap Equity Funds

Similarly, allegations about the Large Cap Equity Funds' underperformance suffice to state a claim.   Plaintiffs compared the Large Cap Equity Fund's performance to benchmarks like the S&P 500 Index and those funds in the Large Blend Morningstar Category. (ECF No. 1, PageID.15).   Again, FCA challenged the

---

[2] In its notice of supplemental authority, FCA cited to two unpublished decisions, one out-of-circuit, in support of its argument that Plaintiffs' benchmarks are not meaningful, especially as it relates to the relevant timeframe.   Both cases are distinguishable. *See England v. DENSO Int'l Am., Inc.*, No. 22-11129, 2023 WL 4851878, at *9 (E.D. Mich. July 29, 2023) (noting plaintiffs focused only on the first two years of performance for a fund); *Lard v. Marmon Holdings, Inc.*, No. 22-cv-04332, 2025 WL 1383269, at *3 (N.D. Ill. May 13, 2025) (rejecting claims based on two years of performance).

applicability of these benchmarks' performance to the Large Cap Equity Funds' performance. (ECF No. 9, PageID.96–97). And, again, FCA's challenge fails.

Here, Plaintiffs alleged that the Large Cap Fund specifically set the S&P 500 as its benchmark and made it the goal to outperform the S&P 500 over a full market cycle. (ECF No. 1, PageID.15). Given that FCA drew its own comparison with the S&P 500, the Court finds it is appropriate to consider this fund in comparison to the Large Cap Equity Fund. (*Id.*). The same is true for the Large Blend Morningstar Category, which FCA classified the Large Cap Equity Fund as part of. (*Id.*). And only once in the five years between 2018 and 2023 did the Large Cap Equity Fund outperform the peer median of the Large Blend Category; it never outperformed the S&P 500. (*Id.* at PageID.18). Based on the Large Cap Equity Fund's failure to meet its stated goal of outperforming its benchmark, the S&P 500, and its poor performance in comparison to its self-identified Large Blend Category, the Court finds the allegations sufficient to state a claim.

And although FCA attempted to distinguish the S&P 500 and the Large Blend Category as incapable of comparison to the Large Cap Equity Fund, (ECF No. 9, PageID.96–97), the Court disagrees for reasons akin to those stated in Section III.B.1. First, FCA associated the Large Cap Equity Fund with the S&P 500 and the Large Blend Category of its own volition; indeed, FCA set a goal for the Large Cap Equity Fund to outperform the S&P 500. (ECF No. 1, PageID.17–18). Accordingly,

the Court finds it appropriate to compare the funds.  Likewise, the Court will consider the three-to-five year metrics in regard to the Large Cap Equity Fund for the same reasons stated above. *Supra* p. 20.  Plaintiffs offered data beyond just three-to-five year metrics, and conclusions about the applicability of such metrics is best left for the factfinder.

### C.       Plaintiffs' Remaining Claims Will Also Survive Dismissal.

FCA moved to dismiss the remaining two claims as derivative of the breach of fiduciary claim.  But because the Court finds that Plaintiffs stated sufficiently a claim for breach, it will deny the motion to dismiss Plaintiffs' failure to monitor and knowing breach of trust claims.

* * *

For the reasons given, the Court **ORDERS** that the motion to dismiss (ECF No. 9) is **DENIED**.


Dated: September 30, 2025               s/Robert J. White
                                        Robert J. White
                                        United States District Judge